UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRIGITTA A. WUTHRICH,

    Plaintiff,

v.                          Case No: 2:17-cv-261-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY and SSA,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on consideration of Magistrate Judge Carol Mirando's Report and Recommendation (Doc. #25), filed on July 28, 2018, recommending that the Decision of the Commissioner be affirmed. Plaintiff filed Objections to the Report and Recommendation (Doc. #26) on August 13, 2018. The Commissioner did not file a response, and the time to do so has expired. For the reasons set forth below, the objections are overruled, the Report and Recommendation is accepted, and the decision of the Commissioner is affirmed.

**A. Standard of Review**

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004)(citing Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla

but less than a preponderance, and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)(citing Crawford, 363 F.3d at 1158-59). Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59 (citing Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)). The Court does not decide facts anew, make credibility judgments, reweigh the evidence, or substitute its judgment for that of the Commissioner. Moore, 405 F.3d at 1211 (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007)(citing Martin, 894 F.2d at 1529).

**B. Decision of the Administrative Law Judge**

After a remand from the Appeals Council (Doc. #16-2, Tr. 15), an administrative law judge (ALJ) found that plaintiff had not engaged in substantial gainful activity since January 2, 2009, the date claimed as the onset of her disability. (Id., Tr. 15, 18.) The ALJ further found that plaintiff had severe impairments of bipolar disorder, depressive disorder, mood disorder, a history of

post-traumatic stress disorder, anxiety disorder, borderline traits, borderline personality disorder, alcohol-induced mood disorder, alcohol abuse and dependence, sedative, hypnotic, and anxiolytic dependence, poly-substance abuse and a history of poly-substance overdose, alcohol dependence, and a history of cannabis dependence in remission. (Id., Tr. 18.) The ALJ found no physical impairment that caused more than a minimal limitation on the ability to work, and thus found there were no severe physical impairments. (Id.) The ALJ found that none of the impairments met or equaled any impairment in the Listing of Impairments. (Id., Tr. 19.) The ALJ also noted non-severe impairments including cardiac arrest and respiratory failure secondary to suicide attempt, a history of hypotension, a history of seizures, a history of electrolyte imbalance, and a history of insomnia and history of headaches. (Id., Tr. 22.) The ALJ found that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with certain non-exertional limitations. (Id., Tr. 20-22.)

At a September 3, 2015, hearing plaintiff was a 56 years old woman living alone. (Id., Tr. 48.) Plaintiff occasionally cooked for her church get-togethers, which might require hours to cook, deliver, and serve, and would watch several hours of television a day. (Id., Tr. 49-50, 52.) Plaintiff cleans her own home, does her own laundry, and her grocery shopping. (Id., Tr. 51.)

Starting in 2012, plaintiff has been doing the housekeeping for three homes a week. (Id., Tr. 56, 57.) In 2010, plaintiff worked for C&C Contracting Service in Kentucky arranging lodging and travel for laborers, doing "administrative assistant type things." (Id., Tr. 58.) Plaintiff testified that her vision was correctable with eyeglasses, and she could drive during the day, and could read with reading glasses. (Id., Tr. 62-63.) Plaintiff testified that she can stand "quite a bit" but only sit for an hour to two hours, and could walk for 30 minutes, or longer if cooler outside. (Id., Tr. 63.) Plaintiff testified that she is not supposed to lift over 12 pounds because of metal in her right wrist, but that she could probably lift 25 pounds. (Id., Tr. 64.) Plaintiff had trouble with her range of motion on her right fingertips to the right shoulder. (Id.) Plaintiff testified it is hard to turn a faucet because her right thumb pops and she doesn't have the strength in that digit. (Id., Tr. 65.) Plaintiff testified that she has pain, which is managed with medication, due to her arthritis. (Id., Tr. 67.) Plaintiff testified that sometimes the depression has her in bed for three days, and there is a lack of physical energy but she is getting counseling now. (Id., Tr. 70, 71.) Plaintiff stated that she can concentrate for four to five hours before needing a break. (Id., Tr. 72, 73.) Since 2009 and through 2014, plaintiff was riding a

bike several times a week to almost on a daily basis for 30 to 40 minutes a day.  (Id., Tr. 74, 75.)

The ALJ found that plaintiff was unable to perform her past relevant work, but that that there are jobs that exist in significant numbers in the national economy that plaintiff could perform after considering her age, education, work experience, and residual functional capacity.  (Doc. #16-2, Tr. 27-28.)  A vocational expert testified that plaintiff could be a hand packager (medium, unskilled work), mold filler (medium, unskilled), price marker (light, unskilled work), and laundry classifier (light, unskilled work).  (Id., Tr. 28.)  The vocational expert testified that the jobs could still be done if it was individual of advanced age.  (Id., Tr. 85.)  The ALJ found that the testimony was consistent with the Dictionary of Occupational Titles, and that plaintiff was not disabled.

**C. Claims Raised in Federal Court**

Plaintiff raised seven issues in her federal court appeal of the ALJ's Decision.  (Doc. #25, p. 2.)  Plaintiff asserts the ALJ improperly failed to identify plaintiff's vision and musculoskeletal impairments as "severe" impairments, and failed to consider these impairments in the evaluation of plaintiff's RFC.  Plaintiff also takes issue with the ALJ's finding that she could perform work at all exertional levels, and the minimal weight the ALJ accorded to her GAF scores.  Plaintiff also asserts that the

ALJ erred in finding she could perform jobs that allow being off task 5% of the workday, in addition to regularly scheduled breaks. Finally, plaintiff asserts that substantial evidence did not support the ALJ's finding that the identified jobs are consistent with plaintiff's RFC, and the finding that there exist a substantial number of jobs that plaintiff can perform.

**D. Report and Recommendation**

The Report and Recommendation found against plaintiff on all issues, and recommended affirmance of the ALJ's Decision. In sum, the Magistrate Judge found that the ALJ properly evaluated plaintiff's visual impairments as non-severe, and that substantial evidence supported the ALJ's decision to afford little weight to Dr. Lewis' vision evaluation form, which was inconsistent with Dr. Lewis' own treatment notes. The Magistrate Judge agreed with the ALJ that Dr. Lewis' opinion that plaintiff's ability to read would be substantially reduced by the vision impairments was undermined by his statement that the ability to write or follow written instructions would not be affected.

The Magistrate Judge found that substantial evidence supported the ALJ's findings that plaintiff did not have a "medically determinable impairment" of Reiter's syndrome because Mr. Cetin, a Physician Assistant, was the "provider" who assessed Reiter's syndrome, not Dr. Patel, who simply signed the treatment note. Additionally, if this was a medically determinable

impairment, the Magistrate Judge found that substantial evidence supported the ALJ's determination that the musculoskeletal issues and impairments were not severe. Alternatively, the Magistrate Judge found the ALJ's vision and musculoskeletal determinations were harmless error because, having found plaintiff suffered from thirteen severe impairments, the ALJ proceeded beyond step two of the sequential evaluation process.

The Magistrate Judge found that the ALJ's RFC findings were supported by substantial evidence because plaintiff's subjective comments were properly weighed against the record, and that the "ALJ's thorough, well-articulated findings" supported the finding that plaintiff could perform work at all exertional levels. (Doc. #25, p. 25.) The Magistrate Judge also noted that the record contains a large variety of GAF scores ranging from 1 to 55 between 2009 and 2012. The Magistrate Judge found that the ALJ'S conclusion that the scores were not consistent with the record as a whole was supported by substantial evidence.

As to job numbers, the Magistrate Judge found that the vocational expert thoroughly explained how the job numbers were determined, and nothing in the testimony suggested that the vocational expert relied on numbers for the OES groups. The Magistrate Judge found that substantial evidence supported the step five determination. The Magistrate Judge found that the limitation for simple work was not inconsistent with a reasoning

level of up to 3 for unskilled work, and the four identified jobs were unskilled jobs with a specific vocational profile of 1 or 2. The Magistrate Judge noted that the ALJ was permitted to rely on the vocational expert's testimony, and plaintiff's counsel did not raise any conflict between the testimony and the DOT.

**E. Resolution of Objections to Report and Recommendation**

Plaintiff's objections relate to five of the issues: The ALJ's findings that vision and musculoskeletal issues were not severe impairments; the failure to consider these impairments in the evaluation of the RFC; the finding of an ability to perform work at all exertional levels; and the consideration of the GAF scores.

**(1) Vision As A Severe Impairment**

Plaintiff argues that the ALJ erred in failing to determine that her vision problems constituted a severe impairment, and in failing to consider this severe impairment in the RFC determination. Plaintiff asserts that the vision problems clearly affected her ability to perform work functions, and should have been found severe. Plaintiff argues that "vision problems motivated the ALJ to prohibit commercial driving" (Doc. #26, p. 2), and that the ALJ should have contacted the treating physician (Dr. Lewis) if he found that the opinion was ambiguous.

On August 19, 2015, Dr. Lewis completed a Vision Evaluation form and diagnosed plaintiff with astigmatism, presbyopia, and

early cataract. (Doc. #16-12, Tr. 634.) Dr. Lewis indicated that plaintiff's vision impairment substantially affected her capacity to perform reading and driving in her daily activities, and that plaintiff's vision substantially affected her near vision. (Id.) Dr. Lewis also completed a Special Senses and Speech form indicating that plaintiff did not have loss of visual efficiency or visual impairment in the better eye with a visual efficiency percentage of 20 or less after best correction, or a visual impairment value of 1.00 or greater after best correction. (Id., Tr. 637.) Dr. Lewis found that plaintiff did not have a loss of visual acuity with remaining vision in the better eye after best correction of 20/200 or less. (Id., Tr. 639.) The office visit notes for the comprehensive eye exam indicate mild and moderate blurred vision, but 20/25 uncorrected vision in the right eye and 20/30 uncorrected vision in the left eye. (Id., Tr. 642.) There was no inflammation in either eye. Plaintiff was prescribed glasses and told to return in one year. (Id., Tr. 643.) At the hearing on September 3, 2015, plaintiff stated that she can drive in the daytime, but does not drive at night. Plaintiff also testified that she can read with reading glasses. (Doc. #16-2, Tr. 63.) The ALJ added a non-exertional limitation for no commercial driving, and in making the finding, "considered all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence." (Id., Tr. 20-21.)

The medical records provide substantial support for the ALJ's finding of non-severe vision impairment. The objection is overruled.

### (2) Musculoskeletal Issues As Severe Impairment

Plaintiff argues that the ALJ failed to assess the severity of the Reiter's syndrome because it was not found to be medically determinable. Plaintiff asserts, however, that her musculoskeletal impairment was severe because Dr. Patel's signature on the treatment record diagnosing Reiter's syndrome adopted the diagnosis. Plaintiff argues that this was not harmless error because the physical limitations were not considered in the RFC evaluation.

The ALJ noted that plaintiff told the nurse practitioner that the emergency room doctor told her she had Reiter's syndrome, and the nurse practitioner diagnosed degenerative joint disease. (Doc. #16-2, Tr. 24.) The Community Care Family Clinic office visit notes state that the source for the history of "reiters syndrome" was the patient. Just prior to this visit, plaintiff was seen at the Desoto Memorial Hospital for burning with urination, joint pain, and drainage from her left eye. (Id., Tr. 627.) Plaintiff denied back pain, gout, joint pain or swelling or muscle pain, and denied muscle stiffness. (Id., Tr. 629.)

Plaintiff's possible symptoms were discussed, including reactive arthritis. (Id., Tr. 631.) There are no ongoing treatment records, and nothing to support a finding that the diagnosis was a severe impairment even if a doctor signed off on the nurse practitioner's findings. The ALJ considered the arthritis diagnosis but rejected it as severe based on record evidence of an active life, including biking. (Id., Tr. 23.) The ALJ noted that records from June 2011 reflected that plaintiff would ride her bike 4-5 miles per day, records from February 2015 showed no acute distress and bike riding, and in August 2015, plaintiff was exercising 5 times a week and working. (Id., Tr. 23.) The objection is overruled.

**(3) RFC: Ability to Work At All Exertional Levels**

Plaintiff argues that the ALJ's assessment that plaintiff could perform work at all exertional levels fails to reflect the frequent assessments of arthritis, Reiter's syndrome, mitral valve collapse, cardiac arrhythmia, chronic pain, degenerative joint disease, history of low back pain, history of seizures, and arm/wrist surgery. (Doc. #26, p. 7.) This finding, plaintiff argues, is unsupported because medium work requires the ability to lift up to 50 pounds occasionally, and 25 pounds frequently, and plaintiff's testimony contradicts the finding. However, the record reflects that the ALJ clearly rejected plaintiff's credibility based on her contradictory testimony regarding daily

activities. (Doc. #16-2, Tr. 25-26.) The finding that plaintiff's impairments do not restrict her ability to work at this level is supported by substantial evidence. The objections are overruled.

**(4) Weight Given To GAF Scores**

Plaintiff argues that her inability to afford ongoing treatment and failing to receive ongoing treatment is entirely consistent with the low GAF scores, and the ALJ's contrary finding rejecting the value of the GAF scores is unsupported. The Court finds that the ALJ clearly articulated that the scores were "grossly" inconsistent with the medical evidence and the lack of consistent, ongoing treatment. Therefore, the ALJ provided support for giving the GAF scores only minimal weight. (Doc. #16-2, Tr. 26.) The objection is overruled.

After an independent review, the Court agrees fully with the findings and recommendations in the Report and Recommendation.

Accordingly, it is now

**ORDERED:**

1. The Report and Recommendation (Doc. #25) is **accepted and adopted** by the Court.

2. Plaintiff's Objection (Doc. #26) is **OVERRULED**.

3. The Decision of the Commissioner of Social Security is **affirmed.**

4.  The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___13th___ day of September, 2018.

                                                                           JOHN E. STEELE
                                                                           SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Carol Mirando
U.S. Magistrate Judge

Counsel of Record